IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHATSWORTH PRODUCTS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 2466 |
| PANDUIT CORP., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S
MOTION UNDER 35 U.S.C. § 285 FOR ATTORNEYS' FEES AND COSTS

JAMES F. HOLDERMAN, District Judge:

Plaintiff Chatsworth Products, Inc. ("Chatsworth") filed this lawsuit on April 26, 2005 against defendant Panduit Corporation ("Panduit"), seeking a declaratory judgment that Panduit's patent number 6,884,942 ("'942 patent") was invalid. Panduit with its answer filed a counterclaim alleging infringement of the '942 patent by Chatsworth. The parties reached a settlement in this case on February 7, 2006. With the consent of the parties, this court entered an order on March 15, 2006, dismissing Panduit's counterclaim with prejudice. In that same order, Chatsworth's claims for declaratory judgment were dismissed without prejudice for lack of subject matter jurisdiction. (Dkt. No. 67.) Before the court is Chatsworth's motion for attorneys' fees and costs pursuant to 35 U.S.C. § 285. (Dkt. No. 73.) For the reasons stated below, that motion is denied.

BACKGROUND

The key issue raised by Chatsworth's motion is whether Panduit engaged in inequitable conduct in its dealings with the Patent and Trademark Office ("PTO") when prosecuting the '942

1

patent by failing to disclose with intent to deceive the PTO allegedly material prior art regarding hinged covers. The '942 patent is a continuation of Panduit's patent number 6,766,093 ("'093 patent"). The claims in the two patents are for a mounted cable manager with a "front cable routing section" that includes "a plurality of spaced fingers" and a "removable cover" that "may be hingedly connected." (Dkt. No. 73, Exs. 1, 9.) In other words, the patents are for a mounted cable manager with a hinged cover that attaches to the cable manager's fingers.

A.      '093 Patent and Related Litigation, Case No. 04 C 4765

The '093 patent was the subject of earlier, related litigation in case no. 04 C 4765 filed in this district court by Panduit against Chatsworth for alleged infringement on July 21, 2004, the day after the '093 patent issued. *Panduit v. Chatsworth*, No. 04 C 4765. During the discovery phase of case no. 04 C 4765, Chatsworth identified on August 11, 2004 an installation sheet ("Early Installation Instructions") published by Panduit for distribution along with hinged covers for its cable managers as early as June 1999 (Pl. Mot. Ex. 4, hereinafter "Ex. 4"). (Pl. Mot. Ex. 11.) Chatsworth also identified on September 3, 2004 a prior Panduit patent, patent number 6,437,243 ("'243 patent"), (Pl. Mot. Ex. 20, hereinafter "Ex. 20"), which described a claim for a cable manager with a hinged cover attachable to the cable manager's "duct fingers." (Pl. Mot. Exs. 11.) Panduit promptly disclosed both of these sources of prior art to the PTO on August 17, 2004 and September 16, 2004 in relation to the '093 patent. (Pl. Mot. Exs. 11, 12, 14.) On September 27, 2004, Chatsworth identified another instruction sheet ("Later Installation Instructions"), (Pl. Mot. Ex. 5, hereinafter "Ex. 5"), that Panduit allegedly sent to customers as early as September 1999 along with hinged covers for its cable managers and a Product Bulletin, (Pl. Mot. 3, hereinafter "Ex. 3"), with images and descriptions of the hinged covers. (Pl. Ex. 11.)

2

Panduit provided only the Product Bulletin (Ex. 3) to the PTO on November 18, 2004, when Panduit filed a request that the PTO reissue the '093 patent, citing the Early Installation Instructions, and the Product Bulletin, along with several other sources. (Pl. Mot. Ex. 23.) Panduit then requested a stay of the litigation in case no. 04 C 4765 pending the outcome of the PTO's decision regarding the '093 patent. The court granted the stay on March 2, 2005. (Dkt. Nos. 53, 54 in case no. 04 C 4765.)

B.  '942 Patent

While case no. 04 C 4765 remained pending, Panduit filed on May 10, 2004 an application for the issuance by the PTO of its '942 patent, which was a continuation of the '093 patent. (Pl. Mot. Ex. 1.) Panduit did not submit to the PTO the hinged covers and the Later Installation Instructions (Ex. 5), although the PTO examiner is considered to have reviewed the Earlier Installation Instructions (Ex. 4) and the '243 patent (Ex. 20) since these were in the file of the parent '093 patent. Chatsworth also claims that the PTO was not provided the Product Bulletin (Ex. 3), although its own materials as well as Panduit's application to reissue the '093 patent establish that Panduit disclosed the Product Bulletin (Ex. 3) to the PTO on November 18, 2004. The PTO issued the '942 patent on April 26, 2005. In issuing the patent, the examiner stated the previously listed limitation of the front cable routing system with the "plurality of spaced fingers" and "the hinged cover rotatably attachable to the plurality of fingers" was "neither disclosed nor taught by the prior art of record, alone or in combination." (Dkt. No. 73, Ex. 2.)

C.  Procedural History

The same day the '942 patent issued, April 26, 2005, Chatsworth's complaint in the

3

present litigation was filed. As mentioned earlier, in its complaint, Chatsworth sought a declaratory judgment that the '942 patent was invalid based on Panduit's failure to disclose the prior art of its hinged covers, the Later Instructions Sheet (Ex. 5), and the Product Bulletin (Ex. 3) to the PTO. Chatsworth contended that '942 patent's earliest filing date was March 28, 2000 (based on parent patent applications), but Panduit sent out the Later Installation Instructions (Ex. 5) as early as September 1999 regarding the hinged covers and published the Product Bulletin (Ex. 3) around the same time. According to Chatsworth, the hinged covers, the Later Installation Instructions (Ex. 5), and the Product Bulletin (Ex. 3) were materially relevant prior art that should have been disclosed to the PTO.

Two months later, on June 15, 2005, Panduit filed a request for reexamination of the '942 patent, at which point Panduit disclosed all the remaining prior art, including the Later Installation Instructions. Panduit, however, did not provide the PTO the Early Installation Instructions (Ex. 4) or the '243 patent (Ex. 20), in relation to the '942 patent reexamination because those materials were disclosed in the reexamination of the '093 parent patent to the '942 patent. The Product Bulletin (Ex. 3), according to this court's review of the record (Pl. Mot. Exs. 11, 23), had been disclosed to the PTO on November 14, 2004. The parties appear to agree that, at the latest, the Product Bulletin (Ex. 3) was disclosed to the PTO along with the Later Installations Instructions (Ex. 5) on June 15, 2005.

On August 25, 2005, the PTO granted Panduit's request for reexamination, stating that "at least the publications of the 'PAN-NET Cable Management Systems Hinged Covers' [Product Bulletin, Ex. 3] and the "Panduit Corp. 1999 Installation Instructions for Attaching the Hinged Cover to the Horizontal/Vertical Cable Management' [Later Installation Instructions, Ex.

4

5] raise a substantial new question of patentability" of the '942 patent. (Pl. Mot., Ex. 7 at 1.) The PTO emphasized that the "teaching of a cable manager comprising a plurality of spaced fingers and a hinged cover rotatably attachable to the plurality of fingers was not present in the prosecution of the application" which became the '942 patent. (*Id*. at 2.) Panduit filed its counterclaim alleging infringement of the '942 patent on August 21, 2005, the same day the PTO granted reexamination of the '942 patent. According to the record as it exists at this time, the PTO has not yet decided whether to cancel the '942 patent.

As stated earlier, the parties agreed to settle the case on February 7, 2006. Panduit's counterclaim for infringement was dismissed with prejudice and Chatsworth's claims for declaratory judgment were dismissed for lack of subject matter jurisdiction. (Dkt. No. 67.) In addition, Panduit unconditionally promised that it would not sue Chatsworth for infringement of the '942 patent.

Now Chatsworth seeks payment of its attorneys' fees and costs pursuant to 35 U.S.C. § 285. In support of its motion for attorneys fees and costs, Chatsworth argues that the case is exceptional due to (1) Panduit's failure to disclose allegedly materially relevant prior to the PTO with intent to deceive, and (2) Panduit's filing of a counterclaim for infringement despite its having knowledge that the '942 patent was invalid.

## STATEMENT OF LAW

Federal district courts have broad discretion to determine whether to award reasonable attorneys' fees to a prevailing party in exceptional cases under 35 U.S.C. § 285. *nCube Corp. v. Seachange Int'l, Inc*., 436 F.3d 1317, 1326 (Fed. Cir. 2006). A case may be considered exceptional where a patentee has engaged in inequitable conduct before the PTO or pursued

litigation in bad faith. *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 974 (Fed. Cir. 2006). A patentee's violation of the express duty of candor and good faith in dealings with the PTO constitutes inequitable conduct. 37 C.F.R. § 1.56(a); *see Ferring B.V. v. Barr Labs., Inc*., 437 F.3d 1181, 1186 (Fed. Cir. 2006). Inequitable conduct includes not only affirmative misrepresentations but also the failure to disclose material information to the PTO. *Pharmacia Corp. v. Par Pharm, Inc*., 417 F.3d 1369, 1373 (Fed. Cir. 2005).

In determining whether a patentee has engaged in inequitable conduct, a court must undertake a two-part analysis. In the first step, the court makes two separate findings: the first is whether the withheld information satisfies a threshold level of materiality to the PTO's determination and the second is whether the patentee had intent to deceive the PTO. *Ferring B.V.*, 437 F.3d at 1186-87. After completing that, the court must weigh the level of materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be held unenforceable. *Id*. "An allegation of inequitable conduct will be sustained if its proponent demonstrates by clear and convincing evidence 'that material information was intentionally withheld for the purpose of misleading or deceiving the patent examiner.'" *Kao Corp*., 441 F.3d at 971-72 (*quoting Allied Colloids, Inc. v. A. Cyanamid Co.*, 64 D.3d 1570, 1578 (Fed. Cir. 1995)).

## ANALYSIS

A.  Prevailing Party Status

To recover fees in exceptional cases under 35 U.S.C. § 285 for proven inequitable conduct, the party seeking the fees must, of course, be the prevailing party in the case. The court first finds that Chatsworth qualifies as a prevailing party. Although the litigation was resolved

6

by agreement, this court entered an order dismissing Panduit's counterclaim against Chatsworth with prejudice. The dismissal with prejudice is a decision on the merits that confers prevailing party status on Chatsworth. *See Power Mosfet Techs., L.L.C. v. Siemens AG,* 378 F.3d 1396, 1415 (Fed. Cir. 2004); *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004).

B.      Materiality

Although Chatsworth is the prevailing party, this court finds that Chatsworth has not established by clear and convincing evidence either the materiality or intent elements to support a finding of inequitable conduct. Turning first to the issue of materiality, Chatsworth contends that Panduit failed to disclose as prior art to the PTO the Later Installation Instructions (Ex. 5) and the Product Bulletin (Ex. 3), which were material to the PTO's decision. In support of its allegation materiality, Chatsworth relies heavily on the PTO's statements in both its initial issuance of the '942 patent and its decision to grant Panduit's request for reexamination. In both those decisions, Chatsworth emphasizes that the PTO examiners stated that the prior art did not disclose or teach the front cable routing system with the plurality of spaced fingers and the hinged cover rotatably attachable to the plurality of fingers. In response, Panduit contends that the Later Installation Instructions (Ex. 5) and the Product Bulletin (Ex. 3) were cumulative of the prior art previously disclosed, including the Early Installation Instructions (Ex. 4) and the '243 patent (Ex. 20). Chatsworth does not dispute that the PTO reviewed the Early Installation Instructions (Ex. 4) and Panduit's '243 patent (Ex. 20).

The Federal Circuit provides several, alternative tests for materiality. *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1316 (Fed. Cir. 2006). The main test, cited by the parties, is whether a reasonable examiner would have considered such prior art important in

7

deciding whether to allow the patent application. *Id*. at 1314. The more recent and narrow materiality test based on the PTO's Rule 56 enacted in 1992, provides that information is material when it is not cumulative to information already of record or being made of record in the application, and (1) establishes a prima facie case of unpatentability, where the information compels a conclusion that a claim in unpatentable under a preponderance of the evidence and giving the broadest reasonable construction consistent with the specification to each term; or (2) refutes or is inconsistent with a position that the applicant takes in opposing an argument of unpatentability relied on by the PTO or in asserting an argument of patentability. 37 C.F.R. § 1.56 (b); *Purdue Pharma, L.P. v. Endo Pharms., Inc*., 438 F.3d 1123, 1129 (Fed. Cir. 2006). Regardless which standard a court applies, withheld information that is merely cumulative to information already before the PTO is not material. *Digital Control, Inc.*, 437 F.3d at 1319.

After comparing the undisclosed Later Installation Instructions (Ex. 5) and the allegedly withheld Product Bulletin (Ex. 3) with the disclosed Early Installation Instructions (Ex. 4) and the '243 patent (Ex. 20), this court finds that the undisclosed information is cumulative of the prior art provided to the PTO. The two sets of installation instructions (Exs. 4 & 5) present the most straightforward analysis, so this court will start there. The two sets of instructions are identical, save for a label attached to one of the six figures in the Early Installation Instructions (Ex. 4). The Early Installation Instructions (Ex. 4) labels a close-up of the cable manager's fingers as "duct fingers." Otherwise, both instructions depict six identical figures, explaining how hinged covers attach to the fingers of the cable manager and the method of opening and removing the hinged covers. This court finds the deletion of the term "duct fingers" in the Later Installation Instructions (Ex. 5) to be a negligible difference that would have no material effect

8

on an examiner's review of the prior art. Although the "duct fingers" appear to differ from the type of "fingers" depicted in the '942 patent, Chatsworth has never asserted that the type of finger in the '942 patent was an issue. Chatsworth has not identified any other differences between the Early Installation Instructions (Ex. 4) and the Later Installation Instructions (Ex. 5) (and it appears that both sets of instructions depict the claims in the '243 patent (Ex. 20).)

The Product Bulletin (Ex. 3) presents a more difficult issue, mostly because both parties' arguments regarding its materiality ignore that Panduit disclosed the Product Bulletin (Ex. 3) to the PTO in the reexamination request of the '093 patent, approximately eight months before the issuance of the '942 patent. Because neither party disputes that a PTO examiner would review the record of the parent patent, in this case the '093 patent, the disclosure of the Product Bulletin (Ex. 3) was timely for the purposes of the examiner's review. Yet, aside from the inclusion of Panduit's reexamination request (Pl. Mot. Ex. 23) and a citation to this reexamination request in Chatsworth's timeline of events (Pl. Mot. Ex. 11), neither party acknowledges that the Product Bulletin (Ex. 3) was disclosed to the PTO 8 months before the issuance of the '942 patent. Despite this lack of discussion, this court finds that the Product Bulletin (Ex. 3) was disclosed to the PTO in enough time for the examiner to review the information as it related to the '942 patent. Because the Product Bulletin (Ex. 3) was timely disclosed and the Later Installation Instructions (Ex. 5) are cumulative, this court finds that the undisclosed prior art was not material.

If the Product Bulletin (Ex. 3) had not been timely disclosed to the PTO, however, there would have been a question as to whether the mounted cable managers with the hinged covers were cumulative of the prior art. Unlike the Later Installation Instructions (Ex. 5), the Product

9

Bulletin (Ex. 3) is the only prior art that appears to depict a *mounted* cable manager in combination with the hinged covers. That the Product Bulletin (Ex. 3) depicts a mounted cable manager in combination with the hinged covers may allow the Product Bulletin (Ex. 3) to minimally meet the threshold requirement for materiality.

C.      Intent to Deceive

Even assuming that Product Bulletin (Ex. 3), which the court has determined was material, had not been timely disclosed, Chatsworth has not proven by clear and convincing evidence that Panduit intended to deceive the PTO. *See Ferring B.V.*, 437 F.3d at 1190 (materiality does not presume intent). The court notes, however, that the issue is close. Chatsworth rests its argument that Panduit intended to deceive the PTO on what Chatsworth contends is the suspicious timing of Panduit's actions. The main example of Panduit's suspicious timing involves its belated disclosure to the PTO of the Later Installation Instructions (Ex. 5) and, Chatsworth argues, the Product Bulletin (Ex. 3).[1] Chatsworth notes that Panduit timely disclosed the Early Installation Instructions (Ex. 4) and the '243 patent (Ex. 20), that Panduit received from Chatsworth during discovery in the 04 C 4765 litigation. But Chatsworth argues that Panduit chose to not submit to the PTO the materials of the Later Installation Instructions (Ex. 5) and Product Bulletin (Ex. 3) that Chatsworth identified to Panduit at a later date during the 04 C 4765 litigation. Chatsworth, however, acknowledges that Panduit disclosed

---

[1]Even though this court found that the Product Bulletin (Ex. 3) was timely disclosed, the parties base their arguments over Panduit's intent to deceive on both its failure to disclose the Later Installation Instructions (Ex. 5) and its failure to disclose the Product Bulletin (Ex. 3). To avoid confusion, this court will follow the parties' arguments in the section on intent that both pieces of information were withheld, given that the court's added consideration of the Product Bulletin (Ex. 3) with regard to intent does not affect this court's analysis of the issue.

all withheld materials at issue in this motion to the PTO on June 15, 2005 and asked for a reexamination of the '942 patent. Chatsworth concludes its argument regarding intent by dismissing Panduit's reason for not timely disclosing the materials—oversight—as not credible, pointing out that the PTO's reason for issuing the '942 patent should have alerted Panduit to the omission.

Intent is rarely proven by direct evidence. In the absence of a credible explanation, intent to deceive may be inferred from the facts and circumstances surrounding the knowing failure to disclose material information. *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005).

Problematically for Chatsworth, Panduit has provided a credible explanation for its failure to disclose that Chatsworth does not refute by clear and convincing evidence. Panduit asserts that it did not disclose the Later Installation Instructions (Ex. 5) and the Product Bulletin (Ex. 3), after disclosing the Early Installation Instructions (Ex. 4) and the '243 patent (Ex. 20), due to an oversight. Oversight and negligence, even gross negligence does not constitute intent to deceive for the purposes of establishing inequitable conduct before the PTO, as this court learned almost twenty years ago in Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 872-73 (Fed. Cir. 1988). *See, e.g., Novo Nordisk Pharms, Inc. v. Bio-Tech. Gen. Corp*., 424 F.3d 1347, 1361 (Fed. Cir. 2005). Chatsworth claims that Panduit's belated disclosure of the prior art in its request for a reexamination of the '942 patent, combined with its filing of a counterclaim for infringement and later a motion to dismiss a day before it asked the PTO to reexamine the '942 patent, could be indicative only of an intent to deceive. But this court finds that Panduit's explanation of its oversight is equally as plausible. Panduit's explanation that it

forgot to disclose the Later Installation Instructions (Ex. 5) and Product Bulletin (Ex. 3) appears to this court to be credible when considered with Panduit's reasonable belief that the information withheld was not material.

In light of Panduit's request for reexamination and later provision of the information to the PTO, Panduit's pursuit of litigation is more likely based on its belief that the '942 patent was valid. *See McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003) (party not liable for either vigorously prosecuting its patent application or enforcing a presumptively valid patent even if later invalidated without clear and convincing evidence of inequitable conduct). Further, the PTO's grant of Panduit's request for reexamination based on a question of patentability from Panduit's failure to disclose prior art presents an issue for the PTO to consider and not a final determination. Nor does this court believe that the PTO's statement in its original issuance of the '942 patent that it was granting the patent based on the lack of prior art regarding the combination of the cable manager and the hinged covers should have alerted Panduit to its failure to disclose. Panduit's explanation for not providing the two pieces of withheld information was oversight; a general statement by the PTO examiner about prior art is not necessarily going to alert Panduit to its oversight. This court finds that Chatsworth failed to provide clear and convincing evidence that Panduit's explanation of oversight is not credible. Based on the evidence, this court finds that Panduit did not have the intent to deceive the PTO even if the undisclosed information could be considered material.

D. Bad Faith Litigation

Chatsworth also raises a separate argument that Panduit pursued its counterclaim in bad faith. This court reiterates its finding that Panduit did not have intend to deceive the PTO and

12

believed its patent to be valid. *See McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d at 1372. Hence, this court also finds that Panduit did not pursue this litigation in bad faith.

## CONCLUSION

Accordingly, plaintiff Chatsworth Product, Inc.'s motion for an award of attorneys' fees and costs under 35 U.S.C. § 285 (Dkt. No. 73) is denied.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

Date: May 17, 2006